UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | | |
|---|---|---|
| BRIAN S. SCHNEIDER, | ) | |
| Plaintiffs, | ) ) ) | |
| v. | ) ) | CASE NO.: 1:04-CV-325-TS |
| UNIROYAL GOODRICH TIRE MANUFACTURING, an operating Division of MICHELIN NORTH AMERICA, INC., | ) ) ) ) ) ) | |
| Defendant. | ) | |

**OPINION AND ORDER**

This matter is before the Court on a Motion for Summary Judgment [DE 29] filed by the Defendant, Uniroyal Goodrich Tire Manufacturing, an operating division of Michelin North America, Inc. (Goodrich).

**BACKGROUND**

On March 17, 2004, the Plaintiff, Brian S. Schneider, filed a Charge of Discrimination with the Fort Wayne Metropolitan Human Relations Commission and the Equal Employment Opportunity Commission alleging that his employer, Goodrich, discriminated against him in violation of the Americans with Disabilities Act (ADA). The EEOC issued a Dismissal and Notice of Right to Sue on June 1, 2004, and the Plaintiff filed his Complaint on August 27. The Plaintiff alleges that the Defendant discriminated against him when it failed to provide a reasonable accommodation for his disability and terminated his employment based upon his actual disability, his perceived disability, or his record of impairment, despite having medical evidence from the Plaintiff's doctor that he could return to work with reasonable accommodations and perform all the

functions of his job. On September 8, 2004, the Defendant filed its Answer.

On December 6, 2004, the Plaintiff moved to amend his Complaint to add a state law claim for retaliatory discharge. The motion was granted and the Defendant filed an Amended Answer.

On July 15, 2005, the Defendant requested summary judgment on all the Plaintiff's claims. On September 19, the Plaintiff responded and on October 4, the Defendant replied. On October 10, the Plaintiff filed a Sur-Response to address the Defendant's argument, raised for the first time in its reply brief, that the Plaintiff's state law claim for retaliatory discharge was preempted by the ADA.

**SUMMARY JUDGMENT STANDARD**

The Federal Rules of Civil Procedure mandate that motions for summary judgment be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "In other words, the record must reveal that no reasonable jury could find for the nonmoving party." *Dempsey v. Atchison, Topeka, & Santa Fe Ry. Co.*, 16 F.3d 832, 836 (7th Cir. 1994) (citations and quotation marks omitted). Rule 56(c) further requires the entry of summary judgment, after adequate time for discovery, against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

A party seeking summary judgment bears the initial responsibility of informing a court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. The moving party may discharge its "initial responsibility" by simply "'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the non-moving party's case." *Id.* at 325. When the non-moving party would have the burden of proof at trial, the moving party is not required to support its motion with affidavits or other similar materials negating the opponent's claim. *Id.* at 323, 325; *Green v. Whiteco Indus., Inc.*, 17 F.3d 199, 201 n.3 (7th Cir. 1994); *Fitzpatrick v. Catholic Bishop of Chicago*, 916 F.2d 1254, 1256 (7th Cir. 1990). However, the moving party may, if it chooses, support its motion for summary judgment with affidavits or other materials and thereby shift to the non-moving party the burden of showing that an issue of material fact exists. *Kaszuk v. Bakery & Confectionery Union & Indus. Int'l Pension Fund*, 791 F.2d 548, 558 (7th Cir. 1986); *Bowers v. DeVito*, 686 F.2d 616, 617 (7th Cir. 1982); *Faulkner v. Baldwin Piano & Organ Co.*, 561 F.2d 677, 683 (7th Cir. 1977).

Once a properly supported motion for summary judgment is made, the non-moving party cannot resist the motion and withstand summary judgment by merely resting on its pleadings. Fed. R. Civ. P. 56(e); *Donovan v. City of Milwaukee*, 17 F.3d 944, 947 (7th Cir. 1994). Federal Rule of Civil Procedure 56(e) establishes that "the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts to establish that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *see also Anderson v. Liberty Lobby*, 477 U.S. 242, 248–50 (1986). Thus, to demonstrate a genuine issue of fact, the non-moving party must do more than raise some metaphysical doubt as to the material facts. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Juarez v. Ameritech Mobile Commc'ns, Inc.*, 957 F.2d 317, 322 (7th Cir.

1992). Only material facts will preclude summary judgment; irrelevant or unnecessary facts do not preclude summary judgment even when they are in dispute. *Anderson*, 477 U.S. at 248–49. If there is no genuine issue of material fact, the only question is whether the moving party is entitled to judgment as a matter of law. *Miranda v. Wisc. Power & Light Co.*, 91 F.3d 1011, 1014 (7th Cir. 1996).

In viewing the facts presented on a motion for summary judgment, a court must construe all facts in a light most favorable to the non-moving party and draw all legitimate inferences and resolve all doubts in favor of that party. *NLFC, Inc. v. Devcom Mid-Am., Inc.*, 45 F.3d 231, 234 (7th Cir. 1995); *Doe v. R.R. Donnelley & Sons Co.*, 42 F.3d 439, 443 (7th Cir. 1994); *Beraha v. Baxter Health Care Corp.*, 956 F.2d 1436, 1440 (7th Cir. 1992). A court's role is not to evaluate the weight of the evidence, to judge the credibility of witnesses, or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact. *Anderson*, 477 U.S. at 249–50; *Doe*, 42 F.3d at 443.

## MATERIAL FACTS

The Plaintiff began working at Goodrich on May 21, 2001. During his employment, the Plaintiff was a member of the United Steelworkers Union and the terms and conditions of his employment were governed by a Collective Bargaining Agreement. At the Goodrich plant, raw rubber product comes in one door, is processed and made into tires, and exits the opposite end of the plant. The tire building department, where the Plaintiff worked, is in the middle of the plant.

The Plaintiff first saw Dr. Nehal Singh, Goodrich's company doctor, on February 10, 2003. The Plaintiff was treated for a rash on his upper extremities and diagnosed with "contact dermatitis"

and rubber allergy. Later in February, Dr. Singh referred the Plaintiff to Dr. Danckaert of Dermatology and Laser Associates because his rash was getting worse despite being on medication. The rash appeared on the Plaintiff's hands, forearms, and shoulders. Dr. Singh also placed a no work restriction on the Plaintiff.

During the month of March, a pattern developed where the Plaintiff would be off work, his rash would improve, he would return to work, and the rash would reappear even worse. When this occurred, he complained to Dr. Singh, sometimes that the rash was intolerable and unbearable. Dr. Singh referred the Plaintiff to Dr. Hasson Taki, an allergist. On March 21, 2003, Dr. Taki saw the Plaintiff and diagnosed him with atopic dermatitis and impetigo. Dr. Taki took the Plaintiff off work and placed him on medical leave from March 22, 2003, to April 9, 2003, to perform allergy tests. The tests were inconclusive. By this time, the Plaintiff was taking various medications, including Prednisone, other steroids, antibiotics, antihistamines, and creams.

On April 14, 2003, the Plaintiff was again seen at the Goodrich dispensary and took off work. The Plaintiff went back to work on May 12, 2003, after his rash had disappeared. The next day, the Plaintiff was again complaining that his skin rash had reappeared. He reported that his skin felt like it was on fire. Dr. Singh also noticed that the rash was now on his face as well as upper extremities and that his eyes were puffy and swollen. Dr. Singh referred the Plaintiff to a third doctor. Dr. Neubauer at Fort Wayne Dermatology saw the Plaintiff and concluded that he had contact dermatitis from exposure to products in his working environment and recommended that he be placed off work until he could be transferred to a different area of the plant. He also prescribed new medications.

After seeing Dr. Neubauer, Goodrich placed permanent work restrictions on the Plaintiff.

Specifically, Dr. Singh restricted the Plaintiff from working in the tire building area.

The Plaintiff was transferred to a different department that had a vacancy. He returned to work on May 27, 2003. The Plaintiff was there three or four days when he noticed pink coloring on his neck and forehead and redness on his face. On June 3, Dr. Singh noted that the rash had reappeared. On June 6, Dr. Sarkisian of Fort Wayne Dermatology saw the Plaintiff. Tests performed on the Plaintiff were inconclusive. On June 9, Dr. Kyler saw the Plaintiff. After seeing these two doctors, the Plaintiff was sent to Dr. Fett at the Indiana University Medical Center.

On June 16, 2003, Dr. Fett issued an initial report that the Plaintiff had contact dermatitis, allergic versus irritant and conducted allergy tests using 119 different patches. Dr. Fett placed the Plaintiff off work until she could find out more about his condition. On June 25, Dr. Fett informed the Plaintiff that he tested positive for an allergy to rubber. She diagnosed him with suffering from occupationally-induced allergic contact dermatitis from a base chemical, P-phenylenediamine, that was used in black rubber products. The allergic reaction was caused by direct contact with rubber as well as from airborne contact with the chemical. Dr. Fett authorized the Plaintiff to return to work after his rash cleared up and as long as he avoided direct or airborne contact with the chemical at issue and wore more extensive protective clothing. Dr. Fett told the Plaintiff that there was no medication that would control his outbreaks and that the only way to solve the problem was to stay away from black rubber. She suggested that he transfer to the corner of the plant farthest away from the tire building area to see if he had a reaction.

After receiving a report from Dr. Fett, Dr. Singh provided written restrictions for the Plaintiff to avoid direct and airborne contact with black rubber chemicals and suggested that this might be achieved by moving him to an area where the chemical is less volatile and by his wearing more

6

protective garments.

The Plaintiff returned to work on July 31, 2003. He worked on the west end of the facility, away from the raw materials coming into the plant. He also wore long sleeves and gloves despite not being aware of Dr. Singh's restriction regarding protective clothing. The Plaintiff was required to report to Dr. Singh after work. His condition was clear. The next morning the Plaintiff was again required to report to the dispensary where Dr. Singh noticed that the Plaintiff had some pink around his eyes, forehead, and neck. The Plaintiff was not allowed to return to work. He was removed from the company's rolls of employment effective September 20, 2003. Goodrich's stated reason for the termination was that it was not able to find the Plaintiff work that he was able to perform.

In September, Dr. Fett wrote Dr. Singh a letter after the Plaintiff contacted Dr. Fett regarding his termination. Dr. Fett opined that the Plaintiff should be able to continue to perform his job if he wore appropriate protective clothing and that his condition was not life threatening. On November 24, 2003, Dr. Fett again wrote Dr. Singh to express that she believed a reasonable accommodation would include barrier protection, including garments and possibly even barrier creams. Dr. Singh believed that barrier creams had been used in the past and were unsuccessful. The Plaintiff believes that, based upon recommendations provided by Dr. Fetts, he should have been allowed to return to work wearing protective garments and barrier creams, which had not yet been tried as an accommodation.

After his employment with Goodrich was terminated, the Plaintiff began working for a steel company, Steel Dynamics, Incorporated (SDI). The Plaintiff's work at SDI did not cause him to get a rash.

**DISCUSSION**

The Defendant argues that the Plaintiff does not have a disability as defined by the ADA because his condition only restricts him from working in a plant that manufactures black rubber products. The Defendant also submits that the Plaintiff was not regarded as having an impairment that substantially limited his major life activities. The Plaintiff maintains that he is substantially impaired in the major life activity of working and that the Defendant regarded him as having an ADA-qualifying disability.

**A. The Americans with Disabilities Act**

The ADA prohibits employers from discriminating against "a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, . . . and other terms, conditions, and privileges of employment," 42 U.S.C. § 12112(a), or "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability . . . ." 42 U.S.C. § 12112(b)(5)(A). Under the ADA, there are two distinct categories of disability discrimination claims: disparate treatment and failure to accommodate. *See Sieberns v. Wal-Mart Stores, Inc.*, 125 F.3d 1019, 1021–22 (7th Cir. 1997). The Plaintiff claims that the Defendant did both.

No matter the type of discrimination alleged—either disparate treatment or failure to provide a reasonable accommodation—a plaintiff must establish first that he was "a qualified individual with a disability." *Id.* at 1022; *Bombard v. Fort Wayne Newspapers, Inc.*, 92 F.3d 560, 563 (7th Cir. 1996) ("The ADA proscribes discrimination against only 'qualified individual[s] with a disability.'") (quoting 42 U.S.C. § 12112(a)); *Weiler v. Household Fin. Corp.*, 101 F.3d 519, 524–25 (7th

Cir.1996) (no recovery under the ADA unless plaintiff establishes she is a qualified individual with a disability).

**1. *Definition of Disability***

Under the ADA, "disability" may be demonstrated by one of three methods: "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individuals; (B) a record of such impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(2).

a. *Physical or Mental Impairment that Substantially Limits Major Life Activities*

With regard to the first method of demonstrating a disability, whether an individual has "a physical or mental impairment that substantially limits one or more of the major life activities," the Supreme Court has instructed courts to make the following inquiries:

> First, we consider whether [the individual's claimed disability] was a physical impairment. Second, we identify the life activity upon which [the individual] relies . . . and determine whether it constitutes a major life activity under the ADA. Third, tying the two statutory phrases together, we ask whether the impairment substantially limited the major life activity.

*Bragdon v. Abbott*, 524 U.S. 624, 631 (1998). EEOC regulations interpreting the ADA define "major life activities" by providing an illustrative, non-exhaustive list that includes "functions such as caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(i); *see also Sinkler v. Midwest Prop. Mgmt. Ltd. P'ship*, 209 F.3d 678, 683–84 (7th Cir. 2000).

"Substantially limits" means that a person is either unable to perform a major life activity

9

or is significantly restricted as to the condition, manner, or duration under which the individual can perform the major life activity as compared to the average person in the general population. 29 C.F.R. § 1630.2(j)(1); *Sinkler*, 209 F.3d at 685. When the major life activity at issue is working a plaintiff must provide evidence that he was substantially limited in employment generally, not simply an inability to perform a particular job for a particular employer. *See Sinkler*, 209 F.3d at 685 (citing *Byrne v. Bd. of Educ.*, 979 F.2d 560, 565 (7th Cir. 1992)); *see also Stein v. Ashcroft*, 284 F.3d 721, 725 (7th Cir. 2002) (stating that "the impairment must substantially limit employment generally") (quoting *Contreras v. Suncast Corp.*, 237 F.3d 756, 762 (7th Cir.2001)). An individual is substantially limited in working if he is significantly restricted in the ability to perform either an entire class of jobs or a broad range of jobs as compared to the average person having comparable training, skills, and abilities. *Sinkler* at 685; *see also Talanda v. KFC Nat'l Mgmt. Co.*, 140 F.3d 1090, 1097 (7th Cir. 1998); 29 C.F.R. § 1630.2(j)(3)(i).

The Plaintiff maintains that he was substantially limited in the major life activity of working. The parties do not dispute that the Plaintiff is restricted from working in any plant manufacturing black rubber products, that is, where rubber is used as a raw product to make a final product. The Plaintiff identifies BRC Rubber, Autolive, Acro Custom Rubber, and Calico Molding as facilities where he could not work without a reasonable accommodation. The question, for purposes of summary judgment, is whether this restriction represents an entire class of jobs or broad range of jobs.

A "class of jobs" is the job from which the plaintiff was disqualified, as well as all other jobs using similar training, knowledge, and skills within the geographical area to which the plaintiff has reasonable access. 29 C.F.R. § 1630.2(j)(3)(ii)(A)–(B); *EEOC v. Rockwell Int'l Corp.*, 243 F.3d

1012, 1017 (7th Cir. 2001). A "broad range of jobs in various classes" is the job from which the plaintiff is disqualified, as well as all other jobs not using similar training, knowledge, and skills within that geographical area. 29 C.F.R. § 1630.2(j)(3)(ii)(A), (C); *Rockwell*, 243 F.3d at 1017.

The Plaintiff's allergy restricts him from working at Goodrich and may restrict him from other industrial or manufacturing jobs within the geographical area, such as Autoliv and BRC Rubber, but it would not restrict him from "all" such jobs. He is able to work, unaffected, in similar capacities at any facility that does not use P-phenylenediamine in its production. Thus, he is not restricted from an entire class of jobs. Likewise, the Plaintiff could be restricted from Goodrich as well as other jobs outside of industrial or manufacturing within that geographical area, but not "all" jobs. Again, only those involving black rubber are out of the Defendant's reach.

"If jobs utilizing an individual's skills (but perhaps not his or her unique talents) are available, one is not precluded from a substantial class of jobs. Similarly, if a host of different types of jobs are available, one is not precluded from a broad range of jobs." *Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 492 (1999). After his employment with Goodrich was terminated, the Plaintiff began working for SDI without any incidents of skin rash. *Byrne v. Bd. of Educ.*, 979 F.2d 560, 565 (7th Cir. 1992) (noting that a court may examine whether a plaintiff can perform or has procured other employment). The Plaintiff also worked at other employers before working at Goodrich without any allergic reaction and nothing in the record indicates that he could not work at these places again. He simply does not experience "substantial foreclosure from the job market." *Rockwell*, 243 F.3d at 1017.

Because the Plaintiff has not demonstrated that his impairment limited an entire class or broad range of jobs, *Skorup v. Modern Door Corp.,* 153 F.3d 512, 515 (7th Cir. 1998), and he does

11

not identify any other major life activity affected by his impairment, he is not a qualified individual with a disability under the first prong of the ADA's definition.

b. *Regarded as Having a Substantially Limiting Impairment*

Even though the Plaintiff has failed to meet the definition of disabled under subsection (A) of the ADA's disability definition, he may still meet the definition under subsection (C). *See Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 489 (1999). Under subsection (C), individuals who are "regarded as" having a disability are disabled within the meaning of the ADA. 42 U.S.C. § 12102(2)(C). Subsection (C) provides that having a disability includes "being regarded as having," *id.* § 12102(2)(C), "a physical or mental impairment that substantially limits one or more of the major life activities of such individual," *id.* § 12102(2)(A). The Supreme Court has said that there are two apparent ways in which individuals may fall within this definition:

> (1) a covered entity mistakenly believes that a person has a physical impairment that substantially limits one or more major life activities, or (2) a covered entity mistakenly believes that an actual, nonlimiting impairment substantially limits one or more major life activities. In both cases, it is necessary that a covered entity entertain misperceptions about the individual—it must believe either that one has a substantially limiting impairment that one does not have or that one has a substantially limiting impairment when, in fact, the impairment is not so limiting.

*Sutton*, 527 U.S. at 489. An employer regards an employee's condition as "substantially limiting" if he perceives the employee to be "significantly restricted as to the condition, manner or duration under which [he] can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity." *Riemer v. Ill. Dep't of Transp.*, 148 F.3d 800, 806 (7th Cir.1998) (quoting 29 C.F.R. § 1630.2(j)(1)(ii)).

Here, the Plaintiff had an impairment and the Defendant was aware of that impairment. The Plaintiff argues that Goodrich believed that impairment was substantially limiting when, in fact, it was not so limiting. He contends that Goodrich, through Dr. Singh, "believed that nothing could be done, that Plaintiff was going to get worse, and that Plaintiff was in danger of succumbing to anaphylactic shock." (DE 36, Pf.'s Mem. 6.) These perceptions, however, only applied to the Plaintiff's contact with P-phenylenediamine, a base chemical found in black rubber. There is not evidence that Dr. Singh, or anyone else at Goodrich, thought otherwise. Because Goodrich believed that the Plaintiff was restricted from working only at its facility, and potentially other manufacturers who used black rubber, it did not regard him as substantially limited in the major life activity of working. *See Rooney v. Koch Air, LLC*, 410 F.3d 376, 382 (7th Cir. 2005) ("If the condition that is the subject of the employer's belief is not substantially limiting, and the employer does not believe that it is, then there is no violation of the ADA under the 'regarded as' prong of the statute.") (internal quotation marks and citation omitted)).

No reasonable jury could find that the Defendant regarded the Plaintiff as unable to work generally.

c. *Having a Record of Such an Impairment*

Neither party addresses subsection (B) under the ADA definition of disabled. Under this subsection, a plaintiff is considered disabled if he has a record of an impairment that substantially limits one or more of his major life activities. 42 U.S.C. § 12102(2)(A), (B). This section extends the coverage of the ADA to persons who "ha[ve] a history of, or ha[ve] been misclassified as having, a mental or physical impairment that substantially limits one or more major life activities." 29 C.F.R.

13

§ 1630.2(k); *Davidson v. Midelfort Clinic, Ltd.*, 133 F.3d 499, 509 (7th Cir. 1998).

The Plaintiff's record of impairment, his contact dermatitis and allergy to a chemical in black rubber products, is not a record of an impairment that substantially limits him in a major life activity.

**2.  *ADA Retaliation Claim***

In his First Amended Complaint, the Plaintiff alleges that the Defendant terminated him in retaliation for engaging in the interactive process and seeking reasonable accommodations under the ADA. (First Amd. Comp. ¶ 7.)

The ADA protects an individual who "has opposed any act or practice made unlawful by [the ADA] or . . . has made a charge [under the ADA]." 42 U.S.C. § 12203(a). For the purposes of an ADA retaliation claim, statutorily protected expressions generally consist of either: 1) an employee's filing of an EEOC charge or participating in an investigation, proceeding, or hearing under the ADA; or 2) an employee's opposition to "any act or practice" that is unlawful under the ADA. *See* 42 U.S.C. § 12203(a); *Talanda v. KFC Nat'l Mgmt. Co.*, 140 F.3d 1090, 1096 (7th Cir. 1998).

In this case, it is undisputed that the plaintiff was not retaliated against for filing a charge or participating in an investigation, proceeding, or hearing under the ADA. The Plaintiff contends that he "availed himself of the ADA when he engaged in the interactive process and partook of the reasonable accommodations offered by Goodrich early in its interaction with [the Plaintiff]." (DE 36, Pf.'s Mem. 10.)  The Defendant, for purposes of summary judgment, assumes that the Plaintiff engaged in statutorily protected expression. Because the parties do not discuss whether engaging in the interactive process qualifies the Plaintiff for protection under the retaliation provision of the ADA, the Court will assume that the Plaintiff engaged in statutorily protected expression. *See, e.g.,*

14

*Silk v. City of Chicago,* 194 F.3d 788, 799 (7th Cir. 1999) (analyzing the plaintiff's retaliation claim under indirect and direct methods of proof where plaintiff claimed employer retaliated against him for requesting an accommodation).[1]

A plaintiff bringing a retaliation claim may prevail by presenting either direct evidence of discrimination or indirect evidence under the burden-shifting method set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Silk,* 194 F.3d at 799. The adaptation of *McDonnell Douglas* to the retaliation context "requires the plaintiff to show that after [engaging in protected activity] only he, and not any similarly situated employee who did not [engage in protected activity], was subjected to an adverse employment action even though he was performing his job in a satisfactory manner." *Stone v. City of Indianapolis Pub. Utils. Div.*, 281 F.3d 640, 644 (7th Cir. 2002). If the employee succeeds in proving his prima facie case, the employer then must offer a nondiscriminatory reason for its adverse action. If the employer's justification is lawful, the employee then must rebut that legitimate reason and establish that a discriminatory motive was the determining factor behind the employer's action. *Silk*, 194 F.3d at 799.

The Plaintiff has not presented any evidence regarding similarly situated employees and instead asserts that "Goodrich has provided no evidence that other similarly situated employees were not terminated." (DE 36, Pf.'s Mem. 11.) With this argument, the Plaintiff attempts to shift the burden of proof to the Defendant, but it is the Plaintiff who must first establish a *prima facie* case

---

[1] Other circuits have either assumed or expressly held that requesting a reasonable accommodation is "protected activity" under the ADA. *See Wright v. CompUSA, Inc.,* 352 F.3d 472, 478 (1st Cir. 2003) ("We now hold that requesting an accommodation is protected activity for the purposes of § 12203(a)."); *Shellenberger v. Summit Bancorp, Inc.*, 318 F.3d 183, 191 (3d Cir. 2003) ("The right to request an accommodation in good faith is no less a guarantee under the ADA than the right to file a complaint with the EEOC."); *Haulbrook v. Michelin N. Am., Inc.*, 252 F.3d 696, 706 (4th Cir. 2001); *Selenke v. Medical Imaging of Colo.*, 248 F.3d 1249, 1265 (10th Cir. 2001).

of retaliation. Because the Plaintiff has not pointed to any similarly situated employees who were not terminated, he cannot proceed with his retaliation claim under the indirect method of proof.

The Plaintiff argues, in the alternative, that he has direct proof of retaliation in the form of circumstantial evidence. Regarding such evidence, the Seventh Circuit has explained:

> In *Troupe v. May Department Stores*, 20 F.3d 734 (7th Cir. 1994), we said that under the direct method of proof a plaintiff must show either an acknowledgment of discriminatory intent by the defendant or circumstantial evidence that provides the basis for an inference of intentional discrimination. That evidence can be (1) suspicious timing, ambiguous statements, etc., (2) evidence that similarly situated employees were treated differently, or (3) evidence that the employee was qualified and passed over for the job and the employer's reason for the difference in treatment is a pretext for discrimination. In *Huff v. UARCO Inc.*, 122 F.3d 374 ([7th Cir.] 1997), we noted that the third type of circumstantial evidence in a direct case is substantially the same as the evidence required under *McDonnell Douglas*.

*Gorence v. Eagle Food Ctrs., Inc.*, 242 F.3d 759, 762 (7th Cir. 2001). The Plaintiff relies on the first type of circumstantial evidence. He argues that it is "suspicious" that he was terminated in the midst of attempting to interact with Goodrich, that he was not allowed to return to work with a reasonable accommodation, that Dr. Singh continued to correspond with Dr. Fett, and that Dr. Singh found it necessary to terminate the Plaintiff despite Dr. Fett's statements that the Plaintiff could work with protective garments and barrier creams. He claims that all of this "seems to indicate retaliatory animus on the part of Goodrich." (DE 36, Pf.'s Mem. 12.)

The Court disagrees. None of the above described events point to retaliatory animus. While the Plaintiff may not agree with Goodrich's decision to terminate his employment, he has not presented circumstantial evidence that provides a basis for an inference of retaliation. The Plaintiff does not explain how continued correspondence between Dr. Singh and Dr. Fett evidences retaliation. He also ignores the fact that from February 2003, when he first saw Dr. Singh, to summer 2003, Dr. Singh and Goodrich made repeated attempts to diagnose the cause of the Plaintiff's rash

by sending him to various specialists. They also moved him to other areas of the plant when possible in an attempt to accommodate him and only terminated him after protective garments did not appear to Dr. Singh to be enough to keep the rash from reappearing.

Moreover, to the extent the Plaintiff's retaliation claim is premised on the Defendant's refusal to allow him to return to work wearing protective cream, his claim simply restates his discrimination claim. *See* 42 U.S.C. § 12112(b)(5)(A) ("As used in subsection (a) of this section, the term 'discriminate' includes . . . not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability"). The Court has already determined that the Plaintiff's failure to accommodate claim lacks merit because he does not have a disability as defined by the ADA.

**B. State Law Retaliation Claim**

The Plaintiff asserts a retaliatory discharge claim under *Frampton v. Central Indiana Gas Co.*, 297 N.E.2d 425 (1973). This Court has supplemental jurisdiction of the *Frampton* claim under 28 U.S.C. § 1367(c)(3). However, according to this statute, a district court may decline to exercise supplemental jurisdiction over these claims if it "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). "[T]he general rule is that, when all federal claims are dismissed before trial, the district court should relinquish jurisdiction over pendent state-law claims rather than resolving them on the merits." *Wright v. Associated Ins. Cos.*, 29 F.3d 1244, 1251 (7th Cir. 1994).

The Court has granted the Defendant's motion for summary judgment and dismissed the Plaintiff's ADA claims over which it had original jurisdiction. Accordingly, the Court relinquishes

17

jurisdiction of the Plaintiff's state claims and dismisses them without prejudice.

## CONCLUSION AND ORDER

For the foregoing reasons, the Defendant's Motion for Summary Judgment [DE 29] is GRANTED. Judgment will be entered in favor of the Defendant against the Plaintiff on the federal claims. The Plaintiff's state law claim is dismissed without prejudice.

SO ORDERED on October 31, 2005.

       s/ Theresa L. Springmann
THERESA L. SPRINGMANN
UNITED STATES DISTRICT COURT